**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 04 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

DAVID McCLARY,

                           Petitioner,

-against-

JAMES T. CONWAY, SUPT. OF ATTICA
CORRECTIONAL FACILITY,

                         Respondent.

--------------------------------------------------------x

**MEMORANDUM & ORDER**

06-CV-2064 (ENV)

**VITALIANO, D.J.**

Pro se petitioner David McClary is before the Court on his petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the writ is denied and his petition is dismissed.

## BACKGROUND

On June 9, 2000, an assailant accosted and punched Julio Anton while Anton was walking home. He died as a result of his injuries on the way to the hospital. More than three months later, on September 28, 2000, petitioner David McClary was arrested in connection with the incident. He was charged, under Kings County Indictment Number 8262/00, with two counts of murder in the second degree (felony and depraved indifference), and related crimes. Following a jury trial in Kings County Supreme Court, McClary was convicted of murder in the second degree (N.Y. PENAL LAW § 125.25[3]) and sentenced to a prison term of 25 years to life.

On direct appeal to the Appellate Division, Second Department, McClary raised three arguments: (1) that the prosecutor's remarks during summation were improper and constituted prosecutorial misconduct, (2) that he was denied effective assistance of trial counsel because trial counsel failed to competently move to suppress McClary's post-arrest confession, the only trial

evidence directly linking him to Anton's death, and (3) that his sentence of 25 years to life, the

statutory maximum, was unnecessarily harsh, in light of the fact that Anton's death was

accidental. The Second Department reduced McClary's sentence to 20 years to life, but

otherwise affirmed the judgment of conviction. See People v. McClary, 17 A.D.3d 699, 699,

792 N.Y.S.2d 919, 919 (2d Dep't 2005). The Court of Appeals denied leave to appeal on June

30, 2005. See People v. McClary, 5 N.Y.3d 765, 834 N.E.2d 1270, 801 N.Y.S.2d 260 (2005).

On April 28, 2006, McClary filed this timely pro se petition for a writ of habeas corpus,

asserting the same three claims raised on direct appeal.

## STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-

132, 110 Stat. 1214 ("AEDPA"), a federal court is not free to issue a writ of habeas corpus under

the independent "contrary to" clause of 28 U.S.C. § 2254(d)(1) unless "the state court arrive[d] at

a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decide[d] a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523

(2000) (O'Connor, J., for the Court, Part II) (internal citation omitted). Similarly, a federal court

is not free to issue a writ of habeas corpus under the independent "unreasonable application"

clause unless "the state court identifie[d] the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the

prisoner's case." Id. at 413. A state court's "unreasonable application" of law must have been

more than "incorrect or erroneous": it must have been "'objectively unreasonable.'" Sellan v.

Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (citing Williams, 529 U.S. at 409 (O'Connor, J., for

the Court, Part II)). Finally, only claims adjudicated on the merits in state court are subject to

AEDPA's deferential standard. See Cone v. Bell, 129 S. Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)).[1]

## DISCUSSION

Petitioner raised all three claims in his petition on direct appeal to the Second Department and on his application for leave to appeal to the Court of Appeals, thereby exhausting his state judicial remedies. The Court addresses each claim in turn.

### A.     Prosecutorial Misconduct

McClary contends that the prosecutor's remarks during summation were inappropriate, violated his Fourteenth Amendment due process rights, and, as a result, deprived him of a fair trial. Specifically, he claims that the prosecutor belittled the defense when he compared it to an offer to sell the Brooklyn Bridge "real cheap" (implying that one would be foolish to believe it), and when he said it should be "flushed" (implying that the defense was excrement). (Petition ("Pet.") at 7.) These statements, McClary argues, denigrated his defense and prejudiced him before the jury. Because McClary's counsel did not contemporaneously object to the statements, the Second Department found the claim "unpreserved for appeal" and dismissed it. McClary, 17 A.D.3d at 699, 792 N.Y.S.2d at 919.

In considering habeas petitions from state prisoners, district courts are barred from reviewing state court determinations which are based on "adequate and independent" state law grounds. Wainwright v. Sykes, 433 U.S. 72, 81, 97 S. Ct. 2497, 2503-04 (1977). Failure to object to prosecutorial misconduct at trial, as required by New York's contemporaneous objection rule, is one such adequate and independent state ground. Id. at 86-87, 97 S. Ct. at 2506

---

[1] Under AEDPA's deferential standard of review, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)).

(contemporaneous objection rule is an adequate and independent state ground); see also

Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007) ("[I]n accordance with New York case

law, application of the state's preservation rule is adequate—i.e., firmly established and regularly

followed."); Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007) ("[Petitioner's claim] was not

raised either by specific objection or by the trial court's decision. As a consequence, . . . [w]e

need not reach or decide the defendant's federal claims, since there was an independent and

adequate state law ground for the state appellate court's decision to affirm the defendant's

conviction."); Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and

deferred to New York's consistent application of its contemporaneous objection rules."). This

Court is therefore barred from reviewing McClary's improper summation claim.

In any event, even if McClary could overcome the AEDPA roadblock posed by this

independent and adequate state ground undergirding the rejection of this claim, he would not

succeed on the merits. A summation may be beyond what controlling practice rules permit

without depriving a defendant of his constitutional rights, and Supreme Court precedents respect

this customary wide latitude given to oral advocacy. Indeed, "it is not enough that the

prosecutors' remarks were undesirable or even universally condemned. The relevant question is

whether the prosecutors' comments so infected the trial with unfairness as to make the resulting

conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464,

2471 (1986) (internal quotation marks and citations omitted).

In line with this understanding, the Court finds that the Second Department's decision to

reject McClary's summation claim was not contrary to, or an unreasonable application of, clearly

established federal law as determined by the Supreme Court. Simply, the prosecutor's argument

neither manipulated nor misstated the evidence, "nor did it implicate other specific rights of the

4

accused such as the right to counsel or the right to remain silent." Id. at 182 (internal citation omitted). And, as the Second Department noted, the weight of the evidence against McClary suggests that the prosecutor's comments, even if beyond the pale, did not meaningfully prejudice him before the jury. See McClary, 17 A.D.3d at 699, 792 N.Y.S.2d at 919. Thus, even if the Court was permitted by AEDPA to entertain its substance, which it is not, no relief would be warranted on this claim.

## B.   Ineffective Assistance of Counsel

McClary's second contention is that he was deprived of his right to the effective assistance of counsel. On appeal to the Second Department, he raised this contention under the Sixth Amendment of the United States Constitution and under article 1, section 6, of the New York state constitution. On this petition, only McClary's Sixth Amendment claim is cognizable. See 28 U.S.C. § 2254(d); Estelle v. McGuire, 502 U.S. 62, 68, 11 S. Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

The Supreme Court announced the constitutional standard for evaluating ineffective assistance of counsel claims in Strickland v. Washington, where it held that "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Under Strickland, to establish ineffective assistance of counsel, a habeas petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (quoting United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005)) (internal

5

quotation marks omitted). To successfully establish the first prong, a habeas petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Brown v. Greene, 577 F.3d 107, 110 (2d Cir. 2009) (internal quotation marks omitted), with a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. To successfully establish the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068.

For the purposes of AEDPA, it is well-settled that the Strickland standard constitutes the pertinent "clearly established Federal law, as determined by the Supreme Court of the United States" for evaluating ineffective assistance of counsel claims. 28 U.S.C. § 2254(d)(1); see Aparicio v. Artuz, 269 F.3d 78, 95 & n.8 (2d Cir. 2001); Sellan, 261 F.3d at 315. Then, in applying the rule, generally, it must be recalled that where a state court summarily addresses a federal claim without explicitly referring to it or to relevant federal case law, it is considered to have ruled on the merits, and AEDPA deference applies. See Sellan, 261 F.3d at 312. Thus, on habeas review, the question before the Court is not whether, in the first instance, the Court finds counsel to have been effective or ineffective; the question is whether the state court decision addressing the issue involved an "unreasonable application" of the Strickland standard to the facts of petitioner's case. See id. at 314-15.

Here, the Second Department failed to articulate its reasoning for denying McClary's ineffective assistance of counsel claim, stating only that "contrary to the defendant's contention, he was provided with meaningful representation." McClary, 17 A.D.3d at 699, 792 N.Y.S.2d at 919. The Second Circuit has held that "when a state court fails to articulate the rationale

6

underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." Eze v. Senkowski, 321 F.3d 110, 125 (2d Cir. 2003) (quoting Sellan, 261 F.3d at 311-12). The Court will therefore "turn directly to the facts of the case" and review the performance of McClary's counsel at trial to ascertain whether the state court's decision could be reasonable under Strickland. Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); see also Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir. 2002); Eze, 321 F.3d at 125.

In overview, police arrested McClary close to four months after the night Anton died, but without obtaining a warrant, based on information that they had obtained from two informants. In his opening, the prosecutor revealed for the first time the names of their informants and said that at least one of them would testify. None did. Because the arrest was warrantless, McClary argues that, had his trial counsel competently pursued a Dunaway hearing,[2] the People may not have been able to show probable cause, resulting in the suppression of his confession. Since McClary's admission to police following his arrest was the only trial evidence directly linking him to the crime, he argues that its suppression would have produced a different outcome in the case. Thus, McClary contends, his trial attorney's failure to move to suppress the statements on Fourth Amendment grounds constituted incompetent and prejudicial performance of his obligations as counsel.

In fact, defense counsel did move to suppress petitioner's statements. He submitted an omnibus motion to exclude "all evidence obtained as a result of [McClary's] unlawful arrest."

---

[2] A pre-trial hearing held pursuant to Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248 (1979), is used to determine whether probable cause existed for a defendant's arrest. Statements given by a suspect arrested on less than probable cause must be suppressed pursuant to the Fourth Amendment's exclusionary rule. Id. at 216, 219, 99 S.Ct. at 2258, 2260.

(Respondent's Affirmation in Opposition to Petition for a Writ of Habeas Corpus, dated June 20, 2006, Exhibit A, at 4). Specifically, he requested a Dunaway hearing based on allegations that items were taken from petitioner and a Huntley hearing to suppress the statements on Fifth and Sixth Amendment grounds. When the prosecution pointed out that the arresting officers had not seized any physical evidence, the trial judge denied the request for a Dunaway hearing but granted the request for a Huntley hearing. After defense counsel presumably became aware of the error in his noticing of the Dunaway application, he did not renew the motion to exclude McClary's statements on Dunaway's Fourth Amendment ground, but, instead, simply proceeded with the Huntley hearing, unsuccessfully attacking petitioner's confession on Fifth and Sixth Amendment grounds. Indeed, at no point prior to the admission of McClary's confession as evidence at the trial did counsel ever renew a Fourth Amendment Dunaway attack on it, though, by that point, he now also knew the identity of the informants upon which the People would rely.

Under the first prong of Strickland, "the proper standard for attorney performance is that of reasonably effective assistance." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. There is some record support for petitioner's argument that counsel's performance on his attempt to suppress the confession fell below an objectively reasonable standard. The argument rests on the conduct described above, that is, defense counsel's initial submission of a boilerplate Dunaway motion that addressed nonexistent physical evidence yet, inexplicably, said nothing about McClary's post-arrest confession—the only evidence that would be offered at trial linking McClary to the crime and the very evidence he was challenging at the Huntley hearing he had requested in the same motion papers. Then, later, counsel also failed to renew the Dunaway motion after his presumed error became apparent, despite having the opportunity to do so. Having said that, though, the Court is also mindful that the Supreme Court has made it clear that

8

"judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Moreover, "the law does not require counsel to raise every available nonfrivolous defense." Knowles v. Mirzayance, 129 S. Ct. 1411, 1422 (2009); see also Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."). At bar, the Court is not presented with a case where counsel failed to challenge the admission of petitioner's statements altogether. To the contrary, defense counsel did move to suppress McClary's statements on Fifth and Sixth Amendment grounds. More to the point, even though he did not attempt to pursue the Dunaway motion further, "it is not sufficient . . . to show merely that counsel omitted a nonfrivolous argument." Aparicio, 269 F.3d at 95. The law requires much more. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Plus, armed with the knowledge of whom the informants were, the failure to renew the Dunaway motion may not have been an omission at all but the result of a realistic reevaluation of the likelihood of success on a Fourth Amendment challenge. Applying Strickland and its progeny, with a particular effort "to eliminate the distorting effects of hindsight," the Court finds that defense counsel's failure to pursue the Dunaway motion in these circumstances was not objectively unreasonable. Id.

Even if defense counsel's conduct was unreasonable and McClary can satisfy the first prong of Strickland, the inquiry does not end. The Court must next assess what prejudice, if any, McClary suffered as a result of counsel's error. The level of prejudice that a petitioner must

demonstrate "lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 693, 104 S. Ct. at 2068). Critically, "[u]nlike the determination of trial counsel's performance under the first prong of Strickland, the determination of prejudice may be made with the benefit of hindsight." Hemstreet v. Grenier, 491 F.3d 84, 91 (2d Cir. 2007) (citing Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S. Ct. 838, 844 (1993)) (internal citation and quotation marks omitted). Where "defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S. Ct. 2574, 2583 (1986). Unquestionably, though, if McClary's motion had succeeded, it is reasonably probable that the verdict would have been different.

But first, McClary must show that a properly-pursued Dunaway motion would have likely prevailed because it was meritorious. The success of this projected motion would turn on state substantive law, which this Court must follow. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938); cf. Lopez v. Grenier, 323 F. Supp. 2d 456, 472 (S.D.N.Y. 2003) (analyzing Fourth Amendment claim underlying federal habeas petitioner's ineffective assistance of counsel claim in terms of state law); see also Shomo v. Zon, No. 05-10337, 2008 U.S. Dist. LEXIS 58459, at *23-24 (S.D.N.Y. Aug. 1, 2008) (same). Under New York law, an informant's tip must satisfy the two-pronged Aguilar-Spinelli test to constitute probable cause for a warrantless

arrest.[3]  People v. DiFalco, 80 N.Y.2d 693, 696, 594 N.Y.S.2d 679, 680 (1993); People v.

Griminger, 71 N.Y.2d 635, 639, 529 N.Y.S.2d 55, 56 (1988).  To satisfy this test, police must be

able to demonstrate the basis of the informant's knowledge, and the veracity or reliability of the

source of the information.  Griminger, 71 N.Y.2d at 639, 529 N.Y.S.2d at 56.

If a tip rests on hearsay, the informant's declaration "that he has himself seen or

perceived the fact or facts asserted" can satisfy the basis-of-knowledge prong.  Spinelli v. United

States, 393 U.S. 410, 425, 89 S. Ct. 584, 593 (1969) (White, J., concurring); see also People v.

Parris, 83 N.Y.2d 342, 346, 610 N.Y.S.2d 464, 464 (1994) (same); Lopez, 323 F. Supp. 2d at

474 (same).  The "veracity" prong requires "showing either that the informant is credible and

that the information supplied may, for that reason, be accepted as true or, in the absence of such

showing, that the specific information given is reliable."  DiFalco, 80 N.Y.2d at 696-97, 594

N.Y.S.2d at 681 (internal citations omitted).  Unlike paid or criminal informants, citizen-

informants who have no connection to crime or law enforcement can be presumed reliable.  See

Parris, 83 N.Y.2d at 350, 610 N.Y.S.2d 464.  Each prong of Aguilar-Spinelli must be satisfied

independently, and a strong showing on one will not compensate for deficits on the other.

DiFalco, 80 N.Y.2d at 697, 594 N.Y.S.2d at 681 (internal citations omitted).

McClary admitted to having punched Anton to two informants, who gave this

information to the police.  Because the informants claim to have observed the admissions in

person, the basis-of-knowledge prong is satisfied.  The veracity prong, however, is more

troubling.  The record before this Court reveals only that the informants knew McClary from the

neighborhood, but nothing else tending to support the veracity of their tip.  There is no evidence

---

[3] The test is named for the two Supreme Court cases that establish it, Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, (1964) and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969).  While the Supreme Court abandoned Aguilar-Spinelli for the more fluid "totality of the circumstances" test in Illinois v. Gates, 462 U.S. 213 (1983), New York has retained the higher standard.  See People v. Griminger, 71 N.Y.2d 635, 639, 529 N.Y.S.2d 55, 55 (1988).

11

or assertion that the police took steps to independently corroborate the tip they received, or that the informants were reliable from previous experience, outside of a nebulous claim that they were at that point in time "known to" the prosecution team. On the other hand, for at least one of the informants, there is nothing to suggest that he had any reason to be untruthful–that he was under arrest himself on unrelated charges, for example, and looking to curry favor with prosecutors. The record does describe him as "from the neighborhood," which certainly suggests a citizen-informant whose veracity would be presumed. See Griminger, 71 N.Y.2d at 641, 529 N.Y.S.2d at 58 (affirming Appellate Division's holding of no probable cause when the only informant was under arrest when he provided the information to the police). [4]

Furthermore, in hindsight's rear view mirror, counsel's conduct, assuming his failure to renew the Dunaway motion stemmed from neglect as opposed to tactical decision, e.g., to keep petitioner's friend and citizen-informant far away from the courthouse, did not so undermine the trial that it "cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S. Ct. at 2064. See Lockhart, 506 U.S. at 369-70, 113 S. Ct. at 842-43 ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."). Given the vagaries of litigation, of course, no one can guarantee with metaphysical certitude what would have resulted in the Dunaway hearing never held. At any rate, fortified by the knowledge that all we know

---

[4] The record, of course, reveals that one of the informants, Calvin Bonapart, had been under arrest on an unrelated robbery charge when he provided the information about McClary to the police. Were it not for the existence of the second informant, Jason Graham, who was a personal friend of petitioner, the People would have been presumptively unable to establish probable cause absent additional information about the steps the police took to corroborate Bonapart's statements. Dispositively, though, the record is absolutely devoid of any suggestion that Graham, the second informant, was in fact unreliable or of any fact that would rebut his presumed reliability as a citizen-informant.

about the second informant is that he was "known to" the People and known personally by petitioner from the neighborhood, it is likely that the People would have prevailed at the Dunaway hearing. On these facts, the Court finds no prejudice, and that McClary cannot satisfy the Strickland test.

But even if the Court finds that McClary can meet both Strickland prongs, which it does not, the conclusion would be unavailing. Under AEDPA, the instant habeas petition can only be granted if the Second Department's finding that McClary was not the victim of ineffective assistance of counsel is an unreasonable application of federal law. Cox, 387 F.3d at 200 (State prisoner's "habeas petition can only be granted if the state courts' decision that he did not receive ineffective assistance of counsel represents an 'unreasonable,' not simply incorrect or erroneous, application of federal law.") (citing Williams, 529 U.S. at 412). In making this determination, the Second Department's decision must be evaluated by the Court to see whether it "reflect[s] some additional increment of incorrectness such that it may be said to be unreasonable." Id. (citing Aparicio, 269 F.3d at 94). "The question 'is not whether [the Court] believes the state court's determination' under the Strickland standard 'was incorrect but whether that ["incorrect"] determination was unreasonable – a substantially higher threshold.' And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 129 S. Ct. at 1420 (internal citation omitted). Clearly, petitioner raised this identical claim on appeal to the Second Department and the state court found that defense counsel's decision not to pursue the Dunaway motion, even under the more favorable New York suppression standard, did not render his performance ineffective. Given the extraordinarily deferential standard, the Court simply cannot conclude that the Second Department's decision on the facts here ran contrary to, or was an unreasonable

13

application of, federal law. McClary's ineffective assistance of counsel claim is therefore denied.

## C.  Excessive Sentence

McClary's final contention is that, "[g]iven the unusual circumstances of the crime, involving what he claims was an accidental death from a single punch, imposition of the maximum sentence of 25 years to life was unnecessarily harsh." (Pet. at 7.) First, factually, on appeal, the Second Department used its discretion to reduce the sentence from the maximum to 20 years to life. See McClary, 17 A.D.3d at 699, 799 N.Y.S.2d at 919. But, second and more important, because this claim rests exclusively on state law grounds, it is not cognizable on habeas review. See 28 U.S.C. § 2254(d); McGuire, 502 U.S. at 67-68, 11 S. Ct. at 480. In any event, it is well settled that a prison sentence cannot be found to violate the Eighth Amendment prohibition on cruel and unusual punishment by virtue of its length so long as it falls within the established statutory range. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."). McClary was convicted of murder in the second degree, for which New York law mandates an indeterminate sentence of 15 years to life to 25 years to life. N.Y. PENAL LAW § 70.00(3)(a)(i). Since his sentence falls within the statutory range (indeed it is mid-range), McClary cannot bring such a constitutional claim on this petition. Accordingly, his excessive sentence claim is dismissed.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus of David McClary is dismissed and the writ is denied. Nevertheless, the Court issues a Certificate of Appealability on petitioner's ineffective assistance of counsel claim only since reasonable jurists could disagree

on this ground as to whether McClary's petition should have been resolved differently.  See

Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04 (2000).  The Court further

grants in forma pauperis status for the purpose of any appeal.

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
   September 29, 2010


             ERIC N. VITALIANO
             United States District Judge